IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MAX MONTOYA,

    Plaintiff,

vs.                                                                 No. 1:13-cv-00773-WJ-SCY

KACY RAMOS,
MICHAEL RICO,
CITY OF ALBUQUERQUE,

    Defendants.

**MEMORANDUM OPINION AND ORDER GRANTING
DEFENDANTS' MOTION *IN LIMINE* NO. I: TO EXCLUDE PLAINTIFF'S EXPERT
WITNESS FROM TESTIFYING AS TO THE ULTIMATE ISSUES IN THIS CASE**

THIS MATTER is before the Court on Defendants Kacy Ramos, Michael Rico, and City of Albuquerque's Motion *in Limine* No. I: To Exclude Plaintiff's Expert Witness from Testifying as to the Ultimate Issues In This Case, filed on June 30, 2017 (**Doc. 77**). Having reviewed the relevant pleadings and the applicable law, the Court finds the Motion is well-taken, and is therefore **GRANTED**.

## BACKGROUND

This lawsuit centers on an encounter between Plaintiff Max Montoya and Albuquerque Police Department ("APD") Officers Kacy Ramos and Michael Rico. On August 27, 2011, shortly after 10:00 p.m., Officers Ramos and Rico were dispatched to 510 Dartmouth Dr. SE in reference to an anonymous 911 call regarding a disturbance on Dartmouth Dr. SE. Officers Ramos and Rico were advised that there were two males in an argument and one of the males mentioned a gun. Officers Ramos and Rico made contact with an unidentified female, who indicated that the argument had come from Plaintiff's residence, 511 Dartmouth Dr. SE. As Officers Ramos and Rico were walking towards 511 Dartmouth, Officer Rico put his flashlight

on the house and shone it on Plaintiff, who ducked down and moved towards his front door. The officers approached Plaintiff, who was at the front door of his residence with a beer in his hand.

The parties dispute what happened next. Defendants state they were concerned Plaintiff might have been armed with a gun. Plaintiff was intoxicated and stumbling, and officers feared for their safety when Plaintiff stumbled toward them. Officer Ramos asked Plaintiff to step toward him, and Plaintiff became aggressive. Plaintiff then moved toward Officer Rico and was laughing. Officers could smell alcohol on his breath. Plaintiff became louder and more aggressive. He stepped closer to Officer Rico with his fists balled up. Officers Ramos and Rico took Plaintiff into custody. Defendants maintain that the officers had reasonable suspicion to support an investigative detention of Plaintiff and his aggressive actions toward the officers gave them probable cause for Plaintiff's arrest based on their perception that Plaintiff battered and/or assaulted officers.

In contrast, Plaintiff argues Officers Ramos and Rico lacked reasonable suspicion to detain him and they did not have probable cause to arrest him. Plaintiff states that the officers dragged him off of his front porch, attacked him, and injured him as they attempted to place him in handcuffs, and despite Plaintiff telling officers he had recently been injured.

Following the altercation, Plaintiff was charged with "Assault Upon Peace Officer" in violation of NMSA 1978, § 30-22-21 and "Resisting, Obstructing, Refusing" in violation of City of Albuquerque Ordinance 12-2-18. After an evidentiary hearing, Bernalillo County Metropolitan Court Judge Christina Argyres dismissed the charges without prejudice for lack of probable cause and lack of reasonable suspicion.

In this lawsuit, Plaintiff has sued the Defendants for civil rights violations under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act. *See* Doc. 41. Plaintiff filed his First

Amended Motion for Partial Summary Judgment on May 26, 2017.  *See* Doc. 71.  In the Motion, Plaintiff argues the Court should grant summary judgment in his favor on his claims that the arrest on August 27, 2011 was executed without probable cause and that officers did not have reasonable suspicion to detain him.  *Id.*  For summary judgment purposes, Plaintiff asks the Court to consider evidence from his liability expert, Retired Chief of Police Dan Montgomery.  Mr. Montgomery reviewed the tape of the arrest and opines that Officers Ramos and Rico did not act in accordance with proper police standards.  In his Motion for Partial Summary Judgment, Plaintiff states that Mr. Montgomery believes there was no probable cause or reasonable suspicion to justify detaining and arresting Plaintiff on August 27, 2011.  *See* Doc. 71 at 6–7, 9.  Defendants filed the instant Motion *in Limine* (Doc. 77) to exclude Mr. Montgomery's testimony to this effect, alleging it would be improper for Mr. Montgomery to opine as to ultimate issues in this case: whether Plaintiff's detention and arrest were effectuated without probable cause and reasonable suspicion, depriving Plaintiff of his Fourth Amendment right to be free from unlawful arrest and excessive force.

## LEGAL STANDARD

Under Fed. R. Evid. 702, "[a] district court may allow expert testimony '[i]f [the expert's] scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue.'" *United States v. Adams*, 271 F.3d 1236, 1245 (10th Cir. 2001).  Rule 702 assigns to the district judge a gatekeeping role to ensure that scientific testimony is both reliable and relevant. *See Dodge v. Cotter Corp.*, 328 F.3d 1212, 1221 (10th Cir. 2003).  Under *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), a reliability finding is a prerequisite for *all* expert testimony in areas beyond the knowledge and experience of lay jurors, not just technical or scientific evidence.

**DISCUSSION**

The Court reads Defendants' request as a narrow one: Mr. Montgomery should be precluded from testimony that unequivocally states Defendants did not have reasonable suspicion to detain or probable cause to arrest Plaintiff. The Court agrees with Defendants that Mr. Montgomery should be barred from testifying as to the ultimate issues in this case. This finding does not mean, however, that Mr. Montgomery would be prohibited from testifying as to his expert opinions on whether the seizure and arrest of Plaintiff by Defendants was inconsistent with modern and well-established police standards assuming Mr. Montgomery was properly qualified as an expert under the requirements set forth in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 597 (1993) and assuming his testimony would aid the jury under according to Rule 702. Indeed, Defendants point out that "Mr. Montgomery did not specifically set forth the opinions as characterized by Plaintiff in his Motion for Partial Summary Judgment." Doc. 77 at 5. Thus, to the extent Plaintiff's counsel intends to have Mr. Montgomery testify that Defendants did not possess reasonable suspicion or probable cause, such testimony will be excluded.

Defendants appropriately point out that although an expert opinion may permissibly embrace the ultimate issue in a given case, the expert cannot state a legal conclusion by applying the law to the facts. *See* Fed. R. Evid. 704(a); *Okland Oil Co. v. Conoco, Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998).

Plaintiff responds that he does not intend to have Mr. Montgomery encroach on the Court's duty to instruct the jury regarding the law. Plaintiff states Mr. Montgomery's opinions on whether Defendants acted in accordance with proper policing standards will help the jury perform its functions. Without Mr. Montgomery's testimony, the jury will have no way to

evaluate whether the officers' conduct was reasonable. Plaintiff points out that Mr. Montgomery did not opine that the seizure and arrest of Plaintiff was unlawful. Rather, he opined that the seizure and arrest was not done in a manner "consistent with modern and well established police standards." Doc. 80 at 3.

The Court concludes that to the extent Mr. Montgomery unequivocally states legal conclusions as to the ultimate issues in this case, such testimony is improper and will be excluded. The relevant legal questions at issue in this case are whether Defendants had reasonable suspicion to detain Plaintiff, and whether Defendants had probable cause to arrest Plaintiff. "[A]n expert may not state legal conclusions drawn by applying the law to the facts." *A.E. by and through Evans v. Independent School Dist. No. 25, of Adair County, Okla.*, 36 F.2d 472, 476 (10th Cir. 1991). Expert testimony that invades the province of the jury or renders opinions on issues of law is improper. *See Specht v. Jensen*, 853 F.2d 805, 809 (10th Cir. 1988) (explaining that testimony on ultimate issues of law an expert "is inadmissible because it is detrimental to the trial process"). Any statements that usurp the province of the jury are inadmissible. Testimony from Mr. Montgomery that Defendants did not have probable cause or reasonable suspicion to justify their detention and arrest of Plaintiff would constitute legal conclusions on ultimate issues of law, and the Court agrees with Defendants that this type of testimony is improper. *See United States v. Dazey*, 403 F.3d 1147, 1171 (10th Cir. 2005) ("However, an expert may not simply tell the jury what result it should reach without proving any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment.").

The Tenth Circuit's reasoning in *United States v. Simpson*, 7 F.3d 186 (10th Cir. 1993), is particularly instructive. There, during trial, the defendant offered the testimony of an expert in

banking practices and sought to ask the expert if certain transactions constituted misapplication or concealment of funds. *Simpson*, 7 F.3d at 188. The government objected, and "the trial court ruled that defense counsel could not ask the question." *Id.* "The trial court, however, gave defense counsel considerable latitude in asking whether the transactions conformed with standard banking procedures." *Id.* On appeal, the Tenth Circuit held the trial court did not abuse its discretion in refusing to admit the expert's testimony, especially in light of the trial court giving defense counsel alternate means to elicit testimony regarding the propriety of the transactions. *See id.* at 188–89. Likewise here, the Court has broad discretion to exclude any testimony that "amounts to a legal conclusion, devoid of helpfulness to the trier of fact." *Id.* at 189. Plaintiff will hardly be prejudiced by the Court's ruling given the fact that, if qualified as an expert under *Daubert*, Mr. Montgomery would theoretically be permitted to testify on the propriety of Defendants' actions in light of modern policing standards. *See Dazey*, 403 F.3d at 1172 ("Even if [the expert's] testimony arguably embraced the ultimate issue, such testimony is permissible as long as the expert's testimony assists, rather than supplants, the jury's judgment.").

It is vital to the jury's role to act as factfinder, and it is the Court's exclusive duty to instruct the jury on the law. Therefore, any expert testimony that unequivocally states Defendants did not have reasonable suspicion or probable cause to detain and arrest Plaintiff usurps these roles and serves no helpful purpose. Clearly, Mr. Montgomery may not tell the jury what result it should reach.

In closing, the Court observes that neither party has raised a *Daubert* challenge as to Mr. Montgomery's qualifications to render expert testimony in this matter. However, for the

purposes of this Motion only and without passing any judgment on whether Mr. Montgomery would ultimately be qualified as an expert or whether his testimony would help the trier of fact, the Court assumes that Mr. Montgomery could provide expert opinions on whether the seizure and arrest of Plaintiff was in accordance with modern police standards.

**THEREFORE, IT IS ORDERED** that Defendants' Motion *in Limine* No. 1 (**Doc. 77**) is **GRANTED**. Mr. Montgomery shall be prohibited from offering expert testimony that the seizure and arrest of Plaintiff was unlawful.

_____
UNITED STATES DISTRICT JUDGE