IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MAX MONTOYA,

    Plaintiff,

vs.                                                             No. 1:13-cv-00773-WJ-SCY

KACY RAMOS,
MICHAEL RICO,
CITY OF ALBUQUERQUE,

    Defendants.

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFF'S FIRST AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT
## and
## DISMISSING PLAINTIFF'S REASONABLE SUSPICION CLAIM ON GROUNDS OF QUALIFIED IMMUNITY

THIS MATTER is before the Court on Plaintiff Max Montoya's First Amended Motion for Summary Judgment on His 4th Amendment Claims Under Section 1983 Claims [sic] for the Unreasonable Siezure [sic] of Max Montoya, as Well as His 4th Amendment Claims Under the New Mexico Tort Claims Act, filed on June 2, 2017 (**Doc. 71**). Having reviewed the relevant pleadings and the applicable law, and the argument and evidence presented at the hearing on August 25, 2017, the Court finds Plaintiff's Motion is not well-taken, and is therefore **DENIED**.[1] Furthermore, the Court **DISMISSES** Plaintiff's claim regarding reasonable suspicion on the grounds of qualified immunity.

---

[1] This Court's local rules provide another basis for the Court to deny Plaintiff's Motion for Partial Summary Judgment. The rule requires that a movant must determine whether a motion is opposed, and a motion that omits recitation of a good-faith request for concurrence may be summarily denied. *See* D.N.M.LR-Civ. 7.1(a). Plaintiff did not do so, thus the Court could have immediately denied his Motion without reaching the merits. *See id.*

## BACKGROUND

This litigation stems from an encounter between Plaintiff and Albuquerque Police Department (APD) Officers Kacy Ramos and Michael Rico.[2] On August 27, 2011, shortly after 10:00 p.m., Officers Ramos and Rico were dispatched to 510 Dartmouth Dr. SE in reference to an anonymous 911 call regarding a disturbance on Dartmouth Dr. SE. Officers Ramos and Rico were advised that there were two males in an argument and one of the males mentioned a gun. An unidentified individual told Officers Ramos and Rico that the argument had come from 511 Dartmouth, Plaintiff's residence. Officer Rico pointed his flashlight at the front of 511 Dartmouth. Plaintiff was in the front yard with a beer in his hand. Officers Ramos and Rico approached Plaintiff at the front door to the residence, announcing themselves as police. Defendants state that the officers were concerned Plaintiff might be armed with the gun that had been mentioned during the argument. It was dark and late at night, so Officer Ramos asked Plaintiff to step towards him. Defendants assert Plaintiff was reluctant to go near the officers and became aggressive. The officers also stated they could smell alcohol and Plaintiff was behaving erratically. For example, Plaintiff laughed when the officers told him they were there to investigate a disturbance.

The parties have drastically different versions of what happened next. Defendants state that Plaintiff moved towards Officer Ramos and stumbled, so Officer Ramos placed his right hand up and braced it against Plaintiff's shoulder to keep Plaintiff from bumping into him. Officer Rico testified that he saw Plaintiff stumble into Officer Ramos, and he thought Plaintiff

---

[2] These facts are taken from the parties' briefs and are supported by evidence in the record as stated by the parties. References to the supporting exhibits are omitted, since they can be found in the parties' briefs. The Court has not considered any of Plaintiff's purported "facts" that are unsupported by citation to the record and that violate Rule 56(C)(1)(A) and/or D.N.M.LR-Civ. 56.1. To the extent that a "disputed" fact is included in the Court's recitation of the facts, the Court has found there was not a legitimate dispute and the fact was not material to resolving this matter. The facts included here have been deemed to be material by the Court and are not disputed unless otherwise noted.

had committed a battery on Officer Ramos. Officer Ramos explained that Plaintiff said, "don't f–k with me like that" and he became louder and more aggressive. Officer Ramos told him that if he continued to be aggressive then he was going to put him in handcuffs. Plaintiff stated that he had just been injured and that he had a lawyer. Officer Ramos asked Plaintiff who was in the residence and Plaintiff stated "I don't give a f–k." Plaintiff then said, "You want to shoot me, go ahead and shoot me."

Officer Ramos testified that Plaintiff stepped forward, closing the distance between himself and Officer Rico, with his fists balled up. Officer Ramos feared that Officer Rico was in danger of an immediate battery. At that point, each officer reached for one of Plaintiff's arms, fearing they were in danger because of Plaintiff's aggression and erratic behavior. Once Plaintiff was in custody, and after he calmed down, Plaintiff admitted to Officer Ramos that he had been in a verbal dispute with two males before the officers arrived. On further investigation, a witness told Officer Ramos that it was Plaintiff who had mentioned a gun during the initial dispute with the two males.

In stark contrast to the facts as relayed by Defendants, Plaintiff claims that Officers Rico and Ramos were the aggressors, and they attacked him without justification, escalating the encounter into a violent exchange. Plaintiff claims he repeatedly told officers he had just been injured, which was why he was reluctant to go near them when they approached his front door. Plaintiff states he was pulled from the porch of his house for no reason, and hit and kicked repeatedly as Officers Rico and Ramos attempted to handcuff him. He states he repeatedly asked the officers to stop hurting him, but they continued to use excessive force. Plaintiff claims to have suffered severe injuries as a result of the beating.

3

Plaintiff relies on the deposition testimony of Teri Milner and Tommy Gallegos who were at his house on the night in question watching television. Their version of the encounter between APD and Plaintiff aligns with Plaintiff's own. Specifically, Ms. Milner explained that after Plaintiff saw the officers outside of his residence, he seemed scared and reluctant to go outside because of his recent injuries. Mr. Gallegos testified that he saw the officers grab Plaintiff from inside the house and drag him outside as they were attempting to place him in handcuffs.

In support of their various positions, both parties rely on Officer Ramos' police lapel video, which documented part of the encounter between Plaintiff and the officers on August 27, 2011. The video is initially blurry and dimly lit, and goes completely dark shortly after it begins. The video shows the officers shine a flashlight onto Plaintiff, and they tell him they are there to investigate a disturbance. He laughs. Shortly thereafter, one of the officers tells Plaintiff that if he continues to be aggressive, they will have to place him in handcuffs. It is impossible to discern what is happening on the video thereafter, because it is completely dark.

Plaintiff filed his initial Complaint on August 20, 2013, and an Amended Complaint on February 26, 2016. In the operative Amended Complaint, Plaintiff brings claims for civil rights violations under 42 U.S.C. § 1983 and the New Mexico Tort Claims Act. *See* Doc. 41. He alleges Defendants subjected him to excessive force and unreasonable seizure in violation of the Fourth Amendment. In the instant Motion, Plaintiff claims he is entitled to judgment as a matter of law that Officers Rico and Ramos lacked reasonable suspicion to detain him and lacked probable cause to ultimately arrest him. Doc. 71. Defendants filed a Response on June 30, 2017 asserting the defense of qualified immunity. Doc. 75. Plaintiff filed a Reply on July 25, 2017. Doc. 81.

# LEGAL STANDARD

## I. Summary Judgment

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Shapolia v. Los Alamos Nat'l Lab.*, 922 F.3d 1033, 1036 (10th Cir. 1993) (citations omitted). Once the moving party meets its initial burden, the nonmoving party must show that genuine issues remain for trial "as to those dispositive matters for which it carries the burden of proof." *Applied Genetics Int'l Inc. v. First Affiliated Secs., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1991) (citation omitted).

A fact is material if it could have an effect on the outcome of the suit. *Smothers v. Solvay Chems., Inc.*, 740 F.3d 530, 538 (10th Cir. 2014). A dispute over a material fact is genuine if the evidence presented could allow a rational jury to find in favor of the nonmoving party. *EEOC v. Horizon/CMS Heathcare Corp.*, 220 F.3d 1184, 1190 (10th Cir. 2000). A court is to view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Shero v. City of Grove*, 510 F.3d 1196, 1200 (10th Cir. 2007). A court cannot weigh the evidence and determine the truth of the matter, but instead determines whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 243 (1986).

Under normal circumstances, the party seeking summary judgment bears the initial burden of showing that there is an absence of evidence to support the nonmoving party's case. *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). Once the movant meets this burden, the

nonmoving party must designate specific facts showing that there is a genuine issue for trial. *See, e.g.*, *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 256. The existence of some alleged, immaterial factual dispute between the parties or a mere "scintilla of evidence" supporting the nonmoving party's position will not defeat an otherwise properly supported motion for summary judgment. *See Anderson*, 477 U.S. at 252, 256.

"[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial," and thus, the moving party is entitled to judgment as a matter of law. *Celotex*, 477 U.S. at 323.

## II. Qualified Immunity

Additional steps are taken when a summary judgment motion raises a defense of qualified immunity. *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Id.* The court may consider either of these prongs before the other "in light of the circumstances in the particular case at hand." *Pearson v. Callahan*, 555 U.S. 223, 236 (2009). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Rojas v. Anderson*, 772 F.3d 1000, 1003 (10th Cir. 2013) (internal quotation marks omitted).

The "clearly established" inquiry exists in part to protect officers with "arguable probable cause," which exists where "a reasonable police officer in the same circumstances . . . and possessing the same knowledge as the officer in question *could* have reasonably believed that probable cause existed in light of well-established law." *Felders ex rel. Smedley v. Malcom*, 755

F.3d 870, 879 (10th Cir. 2014). Because qualified immunity is intended to protect "all but the plainly incompetent or those who knowingly violate the law," summary judgment on the basis of qualified immunity is appropriate "[i]f the law did not put the officer on notice that his conduct would be clearly unlawful." *Saucier v. Katz*, 533 U.S. 194, 202 (2001) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Thus, the "clearly established" inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.* at 201. A right is only considered to be clearly established when there is "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts . . . have found the law to be as the plaintiff maintains." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quotation omitted).

## DISCUSSION

### I. Motion for Partial Summary Judgment

Before turning to the merits of Plaintiff's Motion, the Court takes the opportunity to point out the flaws in Plaintiff's briefing. Federal Rule of Civil Procedure 56(c)(1)(A) requires that a party's factual assertions be supported by "citing to particular parts of materials in the record." *See also* D.N.M.LR-Civ. 56.1(b). Plaintiff failed to cite to the record for most of his purported facts. *See* Doc. 71, "Undisputed Facts" Nos. 1–4; 8–12. Furthermore, many of Plaintiff's purported facts are not only unsupported by reference to the record, they are simply immaterial. The Court will not consider facts that are unsupported by citations to the record and that are not material. Also, Plaintiff attached numerous pages of deposition testimony to his briefing, but he did not identify the portions of those exhibits that he wishes to bring to the Court's attention in violation of this Court's local rules. *See* D.N.M.LR-Civ. 10.6 ("The portions of an exhibit the party wishes to bring to the Court's attention must be marked, e.g., by brackets, shading, or

7

underlining…"). This Court will not do the work of Plaintiff's counsel and sift through the record in an attempt to find support for Plaintiff's factual allegations. *See Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [plaintiff's] arguments for him."). The Court has not considered any of Plaintiff's supposed facts that are improperly supported by the record.

Turning to the merits, Plaintiff brings a claim alleging constitutional violations under § 1983. Specifically, Plaintiff complains Defendants violated his right to be free from excessive force and unreasonable seizures under the Fourth Amendment. *See* Doc. 41 ¶¶ 28–38. At the outset, the Court observes that although Plaintiff seeks summary judgment on his unreasonable seizure claim, Plaintiff begins his argument by asserting that "summary judgment appears unwarranted; the testimony of the officers must be weighed by the jury alongside that of the plaintiff and his witnesses." Doc. 71 at 8. This remark is puzzling, but the Court assumes Plaintiff's counsel did not intend to argue that he is not entitled to summary judgment in his own partial summary judgment motion.

Plaintiff continues on to argue that he is entitled to judgment in his favor on his claims that the officers lacked reasonable suspicion to detain him, and lacked probable cause to arrest him. Specifically, Plaintiff relies upon Officer Ramos' lapel video that captured the encounter between him and Officers Rico and Ramos, which he admits is dark. Plaintiff also relies upon his deposition testimony and the deposition testimony of Ms. Milner and Mr. Gallegos to contend that he did not stumble toward the officers, and that he was not aggressive, so the officers had no cause to detain and arrest him. He claims the record clearly shows the officers "lost their tempers and attacked." Doc. 81 at 7.

Defendants respond that Plaintiff is not entitled to summary judgment for two main reasons. First, given the information about a man mentioning a gun during an argument at Plaintiff's home, as well as Plaintiff's "unusual behavior and responses," Officers Ramos and Rico developed reasonable suspicion to justify an investigative detention of Plaintiff. Doc. 75 at 3. Second, Plaintiff's aggressive actions towards Officers Ramos and Rico "gave them probable cause for Plaintiff's arrest based on a perception that Plaintiff had battered and/or assaulted an officer." *Id.* Defendants argue Plaintiff is asking the Court to complete an impossible task, which is determine, based on a dark police lapel video, that Plaintiff was not intoxicated and did not make any aggressive motions at Officers Rico and Ramos. Plaintiff asks the Court to entirely disregard the testimony of Officers Ramos and Rico, and to grant him partial summary judgment based solely on Plaintiff's interpretation of the events portrayed on the dark lapel video. This, the Court cannot do. In responding to Plaintiff's motion, Defendants have presented evidence which could suggest to a reasonable fact finder that Officers Ramos and Rico had reasonable suspicion to conduct an investigatory detention of Plaintiff, and that they developed probable cause to arrest Plaintiff.

    A. <u>Reasonable Suspicion</u>

The facts in the record could lead a reasonable factfinder to conclude the officers had reasonable suspicion to justify an investigatory detention of Plaintiff.[3] Officer Ramos testified at his deposition that when he illuminated Plaintiff with his flashlight, Plaintiff

> ran into the house quickly, which was concerning, obviously, because the dispatch initially mentioned someone with a gun, and in my experience, most people, when we shine a flashlight on them, they don't duck out and kind of take off. So I found that suspicious right away, more concerning because, like I said, we thought a gun may be involved.

---

[3] Plaintiff contends Defendants could not have detained him without probable cause. *See* Doc. 71 at 3. This contention misstates the standard justifying an investigative detention. It is well-settled that probable cause is not required for a detention that has not turned into a full-fledged arrest. *See Reid v. Georgia*, 448 U.S. 438, 440 (1980).

Doc. 75-1 at 4. Clearly, Officer Ramos could have reasonably suspected Plaintiff was engaged in criminal activity, thereby justifying an initial detention. "An officer 'can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity may be afoot, even if the officer lacks probable cause." *Cortez v. McCauley*, 478 F.3d 1108, 1115 (10th Cir. 2007) (quoting *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000)). Defendants have presented evidence that Plaintiff was involved in the initial altercation that led to Officers Rico and Ramos being dispatched to Dartmouth Dr. SE in the first place. A witness specifically told Officer Ramos that Plaintiff had mentioned a gun during a verbal dispute with two males. The Court finds that on these facts alone a reasonable jury could conclude the officers had reasonable suspicion to initially detain Plaintiff.

### B. Probable Cause

Next, the Court finds Defendants have shown a genuine dispute exists with regards to whether the officers had probable cause to arrest Plaintiff. *See Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505 (1986)) ("A 'genuine' dispute exists where the evidence is such that a reasonable jury could resolve the issue either way."). A reasonable factfinder could conclude the officers believed Plaintiff committed a battery when he stumbled into Officer Rico, thus supplying probable cause for the arrest. Officer Rico specifically testified that when Plaintiff stumbled into Officer Ramos, it appeared to him that Plaintiff was committing a battery on Officer Ramos. Doc. 75-2 at 2. A warrantless arrest is permissible when an officer "has probable cause to believe that a person committed a crime." *Romero v. Fay*, 45 F.3d 1472, 1476 (10th Cir. 1995). Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in

10

themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (internal quotation marks omitted). "If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender." *Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001); see also *Petersen v. Farnsworth*, 371 F.3d 1219, 1223 (10th Cir. 2004) ("police officers may constitutionally make arrests for minor offenses committed in their presence").

Likewise, Defendants have presented sufficient evidence that shows a reasonable jury could conclude Officer Ramos had probable cause to arrest Plaintiff based on a perception that Plaintiff was about to batter Officer Rico. Officer Ramos explained that Plaintiff was uncooperative and stated "go ahead and shoot me." Doc. 75-1 at 8. Officer Ramos saw Plaintiff ball up his fists and he could see the veins in Plaintiff's arms, and it scared him since he was facing Officer Rico. *Id.* He testified that he thought Officer Rico was "going to get hit" and he viewed Plaintiff as intentionally making an aggressive movement toward him. *Id.* Plaintiff impermissibly asks the Court to disregard this testimony and find in his favor. It is not the Court's task at summary judgment to make credibility determinations; such decisions are to be made solely by the jury. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 265 ("trial courts are not to weigh evidence when deciding summary judgment motions"). Plaintiff presents witness testimony from Tommy Gallegos and Terri Milner who state Officer Rico and Ramos reached into the home, grabbed Plaintiff off his porch, place him in handcuffs, and dragged him to the police vehicle. However, this testimony starkly contrasts with that of the officers themselves, who emphatically state that Plaintiff was being combative and erratic, and that when he stumbled toward them, they each feared for the other's safety and believed Plaintiff had committed a

battery and/or assault. Based on this competing testimony, which has factual support in the record, a reasonable factfinder could certainly choose to discount the testimony of Mr. Gallegos and Ms. Milner in favor of that of Officers Rico and Ramos.

### C. *Scott* is Inapposite

Plaintiff next argues the lapel video supports his testimony and states the "mere existence of disputed testimony by the officers will not defeat an otherwise properly supported motion for summary judgment." Doc. 71 at 2. He claims that the dark video displays no audible evidence of a drunken stumble toward either officer, but this is simply counsel's characterization and does not necessarily mean such a stumble did not occur.

It is true there are limited circumstances in which a court may disregard one party's version of the facts at summary judgment. In *Scott v. Harris*, 550 U.S. 372 (2007), the Supreme Court concluded that summary judgment was appropriate where video evidence "quite clearly contradicted" the plaintiff's version of the facts. 550 U.S. at 378–81. In *Scott*, the plaintiff claimed he was driving safely while being pursued by police, but video evidence unquestionably showed he was racing down a narrow street at an extremely high rate of speed, running red lights, and weaving in and out of traffic. *Id.* at 379–80. The Supreme Court held that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380. The fact issue was whether plaintiff was driving in a manner that would endanger human life, and the Court reasoned that his version of events was "so utterly discredited by the record that no reasonable jury could have believed him." *Id.*

Here, Plaintiff likens Officer Ramos' lapel video to the video in *Scott*, and asserts no reasonable jury could believe the officers' version of events. Plaintiff argues the dark video shows that he did not drunkenly stumble towards the officers, that he was not aggressive and combative, and that he was innocently pulled from his home and beaten. The factual scenario in *Scott* where the video "blatantly contradicted" the record does not exist here. *See id.* at 380. The Court finds that a reasonable jury could believe the officers based on their testimony and based on much of what is audible in the lapel video. The lapel video does little to aid Plaintiff's position. If anything, the video lends more support to Defendants' contentions as to why Plaintiff is not entitled to summary judgment. Plaintiff has not offered the Court any evidence that blatantly discredits the officers' version of events. Based on this record, a reasonable jury could choose to credit the officers' testimony instead of Plaintiff's recounting of events.

## II. Defendants' Request for Qualified Immunity

In the Response, Defendants invoked the defense of qualified immunity on Plaintiff's Fourth Amendment claims regarding reasonable suspicion and probable cause. *See* Doc. 75 at 16–23. Defendants have not sought qualified immunity in a cross-motion for summary judgment, which is the usual practice and the one preferred by the Court. *See Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013). At the hearing, the Court asked counsel for Defendants why she had not filed a cross-motion raising the defense. Counsel stated that under recent Tenth Circuit precedent, a district court can properly dismiss a claim on the grounds of qualified immunity when the defense is raised in a defendant's response to a plaintiff's summary judgment motion. Counsel directed the Court to the Tenth Circuit's recent opinion in *A.M. v. Holmes*, 830 F.3d 1123 (2016).

In *Holmes*, the Tenth Circuit affirmed the district court's dismissal of the plaintiff's claims on the grounds of qualified immunity when the defendant asserted the defense in his response to the plaintiff's summary judgment motion. *Holmes*, 830 F.3d at 1138. As in this case, the defendant in *Holmes* did not file his own motion for summary judgment invoking qualified immunity. *See id.* Once the defendant raised qualified immunity, the plaintiff devoted "the lion's share of her reply brief to the issue of qualified immunity." *Id.* at 1137. The Tenth Circuit reasoned that as a result, the plaintiff was "not situated to claim on appeal that she lacked notice that she should present evidence (as well as legal argument) designed to forestall a potential grant of qualified immunity" to the defendant. *Id.*

Here, Defendants invoked qualified immunity in the Response, and Plaintiff responded to the defense in the Reply. Thus, the Court concludes that Plaintiff had sufficient notice that the question of qualified immunity could be resolved in the Court's ruling on his motion for partial summary judgment. *See id.* at 1138. Moreover, at the hearing, counsel for Plaintiff indicated that he was not challenging the procedural propriety of Defendants invoking the qualified immunity defense in the Response rather than in a cross-motion for summary judgment. Counsel reminded the Court that qualified immunity can be raised as late as trial, but maintains his position that Defendants are not entitled to qualified immunity on any basis. Thus, the Court concludes Defendants properly raised the qualified immunity defense in the Response.

A. Reasonable Suspicion

The Court finds that Defendants are entitled to dismissal of Plaintiff's Fourth Amendment claim concerning reasonable suspicion because Defendants have articulated a reasonable and objective basis for suspecting that Plaintiff was engaged in criminal activity.[4]

---

[4] At the hearing, the Court indicated it was going to allow additional briefing on whether Plaintiff's reasonable suspicion claim should be dismissed on the grounds of qualified immunity. However, having reexamined the

"Under the reasonable suspicion standard, a police officer 'must have a particularized and objective basis for suspecting the particular person stopped of criminal activity.'" *Vondrak v. City of Las Cruces*, 535 F.3d 1198, 1206 (10th Cir. 2008) (quoting *United States v. Cortez,* 449 U.S. 411, 417–18 (1981)). "An officer who stops and briefly detains a person for questioning must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. Reasonable suspicion does not rise to the level of probable cause, but it does demand something more than an inchoate and unparticularized suspicion or hunch." *Romero v. Story*, 672 F.3d 880, 886 (10th Cir. 2012) (internal quotations, quotation marks, and alterations omitted). A police officer is entitled to qualified immunity if the officer had "arguable reasonable suspicion" in that a reasonable officer could have believed that reasonable suspicion existed to detain the plaintiff. *Vondrak*, 535 F.3d at 1207.

The Court cannot conclude that "no reasonably competent officer" in Officer Rico's and Officer Ramos' position would have detained Plaintiff, because there were numerous factors from which a reasonable officer could have concluded that he had reasonable suspicion under the totality of the circumstances. *See Malley*, 475 U.S. at 341; *see also Saucier*, 533 U.S. at 208. "A police officer cannot legally detain a person simply because criminal activity is afoot. The particular person that is stopped must be suspected of criminal activity." *United States v. Fisher*, 597 F.3d 1156, 1158–59 (10th Cir. 2010). Here, Defendants had a particularized and objective basis to detain Plaintiff. This case involves a 911 call from a witness who explained that men were fighting near Plaintiff's home, and that one of the men mentioned a gun. When Officers arrived at the scene, another witness told them the fight was coming from Plaintiff's residence.

---

submissions of the parties, and in particular having seen that Plaintiff's Reply addressed Defendants' arguments regarding qualified immunity, finds that additional briefing limited to this issue is not necessary.

Officers then encountered Plaintiff on his front porch, and he became combative and confrontational. Officers also thought that he appeared to be intoxicated, which was reasonable given that Plaintiff smelled like alcohol and was behaving erratically. Even given the possibility that each element of Plaintiff's actions, taken individually, might not seem nefarious, a reasonable officer considering the totality of the circumstances would understandably be concerned that a man alleged to have threatened someone with a firearm would possibly use that firearm against Officers Ramos and Rico. Moreover, the Court agrees with Defendants that Plaintiff has not pointed to any clearly established law that prohibits officers from investigating a disturbance involving a gun by speaking with residents of the house to which officers were referred. *See Lundstrom v. Romero*, 616 F.3d 1108, 1120 (10th Cir. 2010) ("A police officer may take such steps as are reasonably necessary to protect his safety and to maintain the status quo during a detention."). Therefore, the Court dismisses Plaintiff's Fourth Amendment claim regarding reasonable suspicion on the grounds of qualified immunity.

    B. Probable Cause

The Court, however, finds that Defendants are not entitled to dismissal of Plaintiff's Fourth Amendment claim regarding probable cause because there are numerous genuine disputes of material fact in this regard and a trial will be required. Although it is undisputed that Officers Ramos and Rico testified that they *believed* they had probable cause to arrest Plaintiff, it is also undisputed that Plaintiff and his eyewitnesses testified to the contrary. Thus, the Court cannot conclude as a matter of law that a reasonable officer could have believed Plaintiff committed a battery and/or assault on Officers Ramos and Rico, simply because it is disputed as to whether any battery or assault occurred in the first place.

## CONCLUSION

Plaintiff has not met his burden of establishing he is entitled to partial summary judgment on his claims that Defendants lacked reasonable suspicion and probable cause for his detention and arrest. Therefore, Plaintiff's Motion for Partial Summary Judgment (**Doc. 71**) is **DENIED**. Furthermore, Defendants are entitled to qualified immunity on Plaintiff's claim that Officers Rico and Ramos lacked reasonable suspicion to detain him, but Defendants are not entitled to qualified immunity as to Plaintiff's claims regarding probable cause.

**IT IS SO ORDERED.**

_____
UNITED STATES DISTRICT JUDGE